Keith W. CLINE, Plaintiff–Appellee,

v.

WAL–MART STORES, INCORPO-RATED, Defendant–Appellant.

No. 96–2680.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 1, 1997.

Decided May 5, 1998.

**ARGUED:** Todd James Horn, Venable, Baetjer & Howard, L.L.P., Baltimore, MD, for Appellant. Timothy Earl Cupp, Cupp & Cupp, P.C., Harrisonburg, VA, for Appellee.

ON BRIEF: Maurice Baskin, Venable, Baetjer & Howard, L.L.P., Baltimore, MD, for Appellant.

Before WIDENER and MURNAGHAN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Affirmed in part and reversed and remanded in part by published opinion. Judge MURNAGHAN wrote the opinion, in which Judge WIDENER and Senior Judge PHILLIPS joined.

## OPINION

MURNAGHAN, Circuit Judge:

Appellee, Keith Cline (Cline), was employed by Appellant, WalMart Stores, Inc. (Wal–Mart), as a night maintenance supervisor, until he was demoted to the position of night maintenance worker following his return from a lengthy medical leave. Cline complained about his demotion to various Wal–Mart officials and informed them of his intent to take legal action. A short time later, Cline was fired for allegedly "stealing time" from the company.

Cline brought suit against Wal–Mart pursuant to the Family Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601, et seq., for failing to restore him to his prior position and for retaliating against him for asserting his rights under the FMLA. Cline also brought suit under the Americans With Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101, et seq., alleging that his demotion and termination were motivated by handicap discrimination. Finally, under state law, Cline alleged that his termination was in violation of public policy. Before trial, the district court dismissed the state law claim and granted partial summary judgment to Cline on his FMLA restoration claim. Thereafter, a jury found Wal–Mart liable on the FMLA retaliation and ADA demotion claims and awarded Cline compensatory and punitive damages. The district court awarded Cline liquidated damages on his FMLA claims. Following the entry of judgment, Wal–Mart made various motions for judgment notwithstanding the verdict (JNOV) or a new trial, which the district court denied.

On appeal, Wal–Mart charges error in the district court's grant of partial summary judgment to Cline on his FMLA restoration claim. Wal–Mart also appeals the district court's denial of its motions for JNOV or a new trial on Cline's FMLA retaliation and ADA demotion claims. For the reasons that follow, we affirm the grant of summary judgment and all findings of liability against Wal–Mart. However, because we find the jury's awards of compensatory and punitive damages on the ADA claim to be excessive, we grant a remittitur or a new trial on those awards at Cline's option. We vacate the award of front pay under the FMLA and remand to the district court for consideration in equity. Finally, we vacate the related FMLA liquidated damages award and remand for recalculation, if necessary.

## I.

On July 21, 1993, approximately six months after undergoing surgery to remove a brain tumor, Cline commenced employment as a night maintenance worker at Wal–Mart's Harrisonburg, Virginia store. While serving in that position, Cline received acceptable performance evaluations and, on May 21, 1994, was promoted by Steve Vincent, then store manager, to the position of night maintenance supervisor, receiving a raise from $5.75 to $7.00 per hour. Shortly after his promotion, Cline was diagnosed with another brain tumor. He advised Wal–Mart's new store manager, Thomas Baxter, that he needed to take a medical leave of absence for surgery to remove the tumor.

Baxter approved Cline's request for medical leave and referred Cline to Wal–Mart's personnel manager, Dennis Brown, who was responsible for informing employees about the terms and conditions of medical and vacation leave. Brown advised Cline that he was required to expend any accrued vacation time before the commencement of his medical leave. Pursuant to those directions, Cline submitted the required form requesting his five days of accrued vacation leave, which Brown approved and for which Cline was paid. Brown also gave Cline a form entitled "Request for Leave of Absence," which was to be completed by Cline and his treating

neurosurgeon. Cline was not provided with any notices relating to his rights under the FMLA.

On August 4, 1994, Cline began his leave of absence for surgery to remove the brain tumor. Throughout the period of his leave, Cline's wife, Mary Ellen Cline, contacted Cline's supervisors, including assistant managers Marlyn Buffington, Jeff Furman, and Paul Moore, to keep them apprised of Cline's medical status and plans to return to work. Around the middle of October 1994, Mrs. Cline notified Moore that Cline would return to work on November 1, if his physician released him as expected.

Prior to the expiration of Cline's FMLA leave, Baxter began having discussions with Gilbert Rieder, a Wal–Mart employee from another store, about the possibility of taking over Cline's position as maintenance supervisor. According to Rieder, Baxter stated that WalMart might have to demote Cline because, following his surgery, he might not have "the mental capacity to supervise and run the night maintenance crew." At or near the end of October 1994, Baxter hired Rieder to replace Cline as night maintenance supervisor.

On November 1, 1994, Cline returned to work without medically imposed restriction. Within several hours of Cline's return, Wal–Mart demoted him from his position as night maintenance supervisor to the position of night maintenance worker. Upon learning of her husband's demotion, Mary Ellen Cline contacted Wal–Mart's district manager, Randy Metje, to object to the demotion on Cline's behalf. Metje informed Mrs. Cline that, according to Baxter, Cline had been demoted "because of his health" and because he "could not work but one or two days a week" and "could not hold the pressure that he had had as supervisor."

Cline personally communicated to Wal–Mart supervisory personnel that he opposed his demotion. Cline informed Brandon Buck and Paul Moore, both assistant managers and supervisors over Cline, that he was upset about the demotion and that he planned to take legal action against the company. In addition, according to Gilbert Rieder, within days of Rieder's taking over the night main-

tenance supervisor's position, Cline, Rieder and Baxter had a meeting during which Cline communicated that he was upset about the demotion and advised Baxter that "he was going to take some sort of action ... like he was going to start with the labor board or with the employment office or something."

On January 3, 1995, Cline arrived at work to attend a mandatory meeting of the night maintenance crew scheduled by Rieder to be held in the employee lounge at 9:00 p.m. Rieder had given maintenance employee Timothy Rosson specific instructions to clock in and wait in the employee lounge until the start of the meeting. Upon entering the store at 8:47 p.m. and seeing that Rieder was already present, Cline clocked in with Rosson and proceeded to the employee lounge.

When Baxter observed Cline and Rosson in the lounge, he decided to fire Cline, and allegedly Rosson, for "stealing time" from the company. Cline was presented with an exit interview sheet signed by Baxter, which stated that Cline was being fired for clocking in early and was ineligible for rehire. Rosson, on the other hand, was not permanently discharged. Although Wal–Mart maintains that it terminated Rosson several days later, Wal–Mart could not produce an exit interview sheet or any other employment record to verify that Rosson was fired, and no record of a policy violation was noted in Rosson's file. In any event, within two weeks after he was allegedly discharged, Rosson was reinstated, at the same hourly wage, to his original position with the company. Wal–Mart eventually promoted Rosson to supervisor of the night maintenance crew.

On June 27, 1995, Cline brought suit against Wal–Mart in the United States District Court for the Western District of Virginia, setting forth three distinct claims for relief. First, Cline alleged that his demotion and termination constituted handicap discrimination in violation of the ADA, 42 U.S.C. § 12101, *et seq.* Next, Cline asserted that Wal–Mart had violated his rights under the FMLA, 29 U.S.C. § 2601, *et seq.*, by failing to restore him to his prior position and by firing him in retaliation for his threat to take legal action. Finally, Cline alleged

under state law that his termination was in violation of public policy.

Wal–Mart moved for summary judgment on all three claims. The district court dismissed without prejudice Cline's state law wrongful discharge claim, but denied Wal–Mart's motion for summary judgment in all other respects. The court then granted a motion by Cline for partial summary judgment on all questions related to the duration of his leave under the FMLA, and struck Wal–Mart's defense that Cline's leave included the period during which he had received paid vacation leave.

The case proceeded to a jury trial with the Honorable Magistrate Judge B. Waugh Crigler presiding. At the close of plaintiff's evidence, Wal–Mart moved for judgment as a matter of law, pursuant to Fed.R.Civ.P. 50(a), on Cline's FMLA retaliation and ADA demotion and discharge claims. The trial court denied Wal–Mart's motions.

At the close of all the evidence, Wal–Mart renewed its motions for judgment as a matter of law, pursuant to Fed.R.Civ.P. 50(b), and the trial court again denied them. Cline then requested and was granted judgment as a matter of law on the remaining issues of his FMLA restoration claim. Thereafter, the jury returned a verdict in favor of Wal–Mart on the ADA termination claim and in favor of Cline on the ADA demotion and FMLA retaliation claims. The district court entered judgment against Wal–Mart in the amount of $688,895.18, which consisted of $117,500 in compensatory damages and $182,500 in punitive damages on the ADA demotion claim; lost wages and benefits in the amount of $1,100 on the FMLA restoration claim; $117,500 in front pay, $36,400 in back pay, and $156,801.59 in liquidated damages on the FMLA retaliation claim; $3,601.59 in interest; and $75,292 in attorneys fees and expenses.

Following the verdict, Wal–Mart filed a motion for a new trial on the issue of damages for the ADA and FMLA claims, and on the issue of liability for the FMLA retaliation and ADA demotion claims. WalMart also filed a motion for JNOV on the FMLA retaliatory discharge claim and on the jury's award of front pay. The district court denied each of Wal–Mart's motions. This appeal followed.

## II.

■ Wal–Mart's first contention is that the district court erred in granting partial summary judgment to Cline on his FMLA restoration claim. We review the district court's decision to grant or deny summary judgment de novo. *See M & M Med. Supplies & Serv. v. Pleasant Valley Hosp., Inc.,* 981 F.2d 160, 163 (4th Cir.1992) (en banc). Pursuant to Fed.R.Civ.P. 56(c), summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See M & M,* 981 F.2d at 162–63.

■ The FMLA entitles eligible employees to take up to twelve weeks of unpaid leave in any twelve month period for specified family or medical reasons. *See* 29 U.S.C. § 2612(a)(1),(c). Under the FMLA, employers may "require" employees to substitute any period of accrued paid vacation or other leave for leave provided under the Act. *See* 29 U.S.C. § 2612(d)(2). As the word "require" indicates, to designate employer-provided leave as FMLA leave an employer must "promptly (within two business days absent extenuating circumstances) notify the employee that the paid leave is designated and will be counted as FMLA leave." 29 C.F.R. § 825.208(b). Therefore, although an employer has the option of requiring an employee to designate vacation or other leave as FMLA leave, that option is waived if the employer fails to give proper notice of its intentions.[1]

On appeal, Wal–Mart contends that the request for leave form that Cline signed provided adequate notice of Wal–Mart's intent to designate Cline's vacation days as FMLA leave. We disagree. The request for leave of absence form Cline signed prior to the commencement of his leave did not mention

---

1. In other words, "[i]f an employee takes paid or unpaid leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement." 29 C.F.R. § 825.700(a).

vacation leave or contain any other language that would reasonably put Cline on notice that his vacation days were to be designated as part of his twelve weeks of FMLA leave. Although the form explained that leave for "medical" reasons was designated as FMLA leave, it said nothing about vacation leave, and a reasonable employee reviewing the form would have no idea that vacation leave was designated. In the absence of proper notice, Cline was entitled to twelve weeks of FMLA leave plus five days of paid vacation leave, for a total of almost thirteen weeks away from work. Because Cline returned from work before the expiration of that period, Wal–Mart violated the FMLA when it failed to restore him to his prior position. We therefore affirm the district court's grant of partial summary judgment.

## III.

Wal–Mart challenges the district court's denial of its motion for JNOV or a new trial on Cline's FMLA retaliation claim. According to Wal–Mart, the record is devoid of evidence sufficient to support a jury's conclusion that Cline's termination was motivated by retaliation.

Our consideration of Wal–Mart's appeal is governed by well-established principles of law. Pursuant to Fed.R.Civ.P. 50(b), a district court may grant JNOV "if there is no legally sufficient evidentiary basis for a reasonable jury to find for the[non-moving] party . . . ." On appeal, we will affirm a denial of JNOV if, "giving [the non-movant] the benefit of every legitimate inference in his favor, there was evidence upon which a jury could reasonably return a verdict for him. . . ." *Abasiekong v. City of Shelby et al.*, 744 F.2d 1055, 1059 (4th Cir.1984) (quoting *Mays v. Pioneer Lumber Corp.*, 502 F.2d 106, 107 (4th Cir.1974)). In making this determination, we are not permitted to retry factual findings or credibility determinations reached by the jury. *See Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1419 (4th Cir.1991). Rather, we are to assume that testimony in favor of the non-moving party is credible, "unless totally incredible on its face," and ignore the substantive weight of any evidence supporting the moving party. *Id.*

Our review of a motion for new trial under Fed.R.Civ.P. 59(a) is governed by a different standard. On review of a motion for new trial, we are permitted to weigh the evidence and consider the credibility of witnesses. *See Poynter v. Ratcliff*, 874 F.2d 219, 223 (4th Cir.1989). A new trial will be granted if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir.1996). The decision to grant or deny a new trial is within the sound discretion of the district court, and we respect that determination absent an abuse of discretion. *See id.*

Under the FMLA, 29 U.S.C. § 2615(a)(2), an employee has a cause of action against an employer who discriminates and/or retaliates against him or her for "opposing any practice made unlawful" by the Act. Although we have not specifically addressed the elements of a prima facie case of retaliation under the FMLA, we have articulated a three-part analysis to be used for cases of retaliation under Title VII. Under that analysis, the plaintiff must show that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.1989) (citation omitted). While we believe this analysis is applicable to the FMLA, we need not apply it in the case at bar. Instead, because this case comes to us following a full trial on the merits, our sole focus is "discrimination *vel non*"—that is, whether in light of the applicable standard of review the jury's finding of unlawful retaliation is supportable. *See Jiminez v. Mary Washington College*, 57 F.3d 369, 377 (4th Cir.1995). Wal–Mart answers this question in the negative, contending that Cline and Rosson were both terminated for the same behavior and that the individual who fired Cline, supervisor Baxter, allegedly did not

know that Cline had threatened to sue the company.

We disagree with both of Wal–Mart's contentions. First, the record contains direct evidence, in the form of Rieder's testimony, that Baxter knew of Cline's threat to take legal action against Wal–Mart. Second, Wal–Mart's temporary discharge of Rosson does nothing to insulate the company from liability for Cline's termination, since the record reveals that although Rosson and Cline engaged in identical conduct, Rosson was reinstated and had his record expunged while Cline was permanently discharged.

In summary, we hold that Wal–Mart terminated Cline in retaliation for asserting his rights under the FMLA. We therefore affirm the district court's denial of JNOV or a new trial on that issue.

### IV.

■ Wal–Mart's next argument is that the district court erred in refusing to grant JNOV or a new trial on Cline's ADA demotion claim. The ADA makes it unlawful to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

According to the ADA, the term "disability" means "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such disability; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). In the case at bar, Cline does not argue that his recurrent brain tumors constitute an actual disability within the meaning of the ADA, or that he has a record of such disability. Instead, Cline contends that he fits within the definition of persons covered by the ADA because, in perceiving Cline to be mentally unfit for the position of maintenance supervisor, Wal–Mart "regarded" him as having a disability.

Of the various terminology and standards relevant to a discussion of this claim, some are found in the ADA itself, 42 U.S.C. § 12102 et seq., and others are in the Act's implementing regulations, see generally 29 C.F.R. § 1630. The regulations explain that a person is "regarded as" having an impairment that substantially limits a major life activity if he:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of others toward such impairment....

29 C.F.R. § 1630.2(*l*)(1)-(2). Therefore, a person is regarded as having a disability that substantially limits a major life activity when other people perceive him in such a way, whether or not he has an actual impairment.

In order to be eligible for coverage under the ADA, an individual must be perceived as having an impairment that substantially limits one or more "major life activities." See 42 U.S.C. § 12102(2)(A), incorporated in 42 U.S.C. § 12102(2)(C). The Act's implementing regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." See 29 C.F.R. § 1630.2(i).

To maintain a cause of action under the ADA, the impairment at issue must be perceived as "substantially limit[ing]" a major life activity. See 42 U.S.C. § 12102(2)(A), incorporated in 42 U.S.C. § 12102(2)(C). The regulations provide that "[w]ith respect to the major life activity of *working*,"

(I) The term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes, as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(I) (emphasis in original). The regulations go on to define a "class of jobs" as:

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills

or abilities, within that geographical area, from which the individual is also disqualified because of the impairment. . . .

29 C.F.R. § 1630.2(j)(3)(ii)(B). In contrast, a "broad range of jobs in various classes" is defined as:

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment. . . .

29 C.F.R. § 1630.2(j)(3)(ii)(C).

In summary, Wal–Mart will be found to have regarded Cline as having an impairment that substantially limited the major life activity of working if Wal–Mart demoted Cline because it perceived him to be significantly restricted in his ability to perform either a class of jobs or a broad range of jobs in various classes.

■ As with any claim of discrimination, Cline is permitted under the ADA to prove his case by direct or indirect evidence, or by use of the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Halperin v. Abacus Tech. Corp.,* 128 F.3d 191 (4th Cir.1997). Here again, however, because this claim comes to us following a full trial on the merits, we are concerned only with the issue of discrimination *vel non. See Jiminez,* 57 F.3d at 377. Therefore, the sole issue facing this Court is whether, when viewed in light of the appropriate standard of review, the jury's finding of intentional discrimination is supportable. We conclude that it is.

Cline offered direct evidence that Wal–Mart demoted him because it perceived him to be disabled. Most notably, the jury heard an admission to this effect from Wal–Mart's district manager, Randy Metje, who informed Mary Ellen Cline that her husband had been demoted because "Thomas Baxter had informed him that [Cline] could not work but one or two days a week and that he could not hold the pressure that he had had as supervisor . . . that he was demoted because

of his health. . . ." The jury also heard the testimony of Gilbert Rieder, who testified that Baxter had offered him Cline's position as maintenance supervisor in case Cline no longer had "the mental capacity to supervise and run the night maintenance crew." Rieder testified that Baxter "felt like [there] might be . . . quite a bit of stress involved in [the job] and didn't know if [Cline would] be able to handle it or not." In light of this evidence, we have no difficulty concluding that Baxter perceived Cline to be significantly restricted in his ability to perform the role of night maintenance supervisor.

■ It remains to be determined whether the night maintenance supervisor's position qualifies as a class of jobs or a broad range of jobs in various classes, as opposed to a single, particular job. We have previously held that to sustain its burden on this point, a plaintiff must demonstrate that the employer "regard[ed the plaintiff] as handicapped in his or her ability to work by finding the employee's impairment to foreclose generally the type of employment involved." *Forrisi v. Bowen,* 794 F.2d 931, 935 (4th Cir.1986); *see also Halperin,* 128 F.3d at 199; *Gupton v. Com. of Virginia,* 14 F.3d 203, 205 (4th Cir. 1994) (holding that a plaintiff's ability to work is substantially limited when his impairment "foreclose[s] him generally from obtaining jobs doing the type of work plaintiff has chosen as his field.").

In the case *sub judice,* we hold that Cline's field of employment is maintenance supervisory work, as opposed to maintenance work in general. We base this holding on the substantial differences between the two positions. Wal–Mart's maintenance employees are required to strip and wax floors, sweep, mop, and clean up the store. The maintenance supervisor, on the other hand, is responsible for ordinary maintenance functions plus a host of supervisory responsibilities, including making a schedule for the maintenance crew, ordering supplies for the department, and training his team of employees in various maintenance tasks, such as stripping and waxing the floors. Cline's job evaluations indicate that he was expected "to develop a team that can do everything well . . . ," and to "spend more time checking on the

quality of work the others on the crew do." Cline was also involved, to some degree, in the process of disciplining employees. Finally, Baxter's statements to Rieder and Metje indicate that the role of maintenance supervisor includes the requirement of handling a "good deal of stress" that does not exist in the ordinary maintenance worker's position, and that the supervisor's job must be performed daily, as opposed to the "one or two days a week" Wal–Mart finds acceptable for maintenance employees in general.

In light of the record, we conclude that Wal–Mart regarded Cline as being substantially limited in his ability to perform a class of supervisory jobs. Baxter's statement that Cline could not handle the stress or hours of the supervisor's position indicates that Baxter perceived Cline to be generally disqualified from handling supervisory tasks. Moreover, given Metje's admissions to Mrs. Cline, there is no question that Baxter's perceptions of Cline were the motivating factor in his demotion. We therefore affirm the district court's denial of JNOV or a new trial on this issue.

## V.

Wal–Mart's final arguments pertain to the district court's denial of JNOV or a new trial with respect to the jury's award of $117,500 in compensatory damages and $182,500 in punitive damages on Cline's ADA demotion claim. According to Wal–Mart, because these damages are grossly excessive and unsupported by the record, this Court should vacate the awards or reduce them accordingly. Wal–Mart also contends that the district court erred in submitting to the jury the determination of front pay on the FMLA retaliation claim. We address each of these issues separately.

### A. Compensatory Damages for ADA Claim

■ Under the ADA, compensatory damages are available for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses...." 42 U.S.C. § 1981a(b)(3). In the present case, it was undisputed that Cline lost $1,100 in wages as a result of his demotion. In addition, the evidence demonstrated that Cline suffered some degree of emotional pain and mental anguish. Cline testified that following the demotion he "felt like [his] whole world had just crashed in.... [I]t was actually a worse feeling than when the doctor told [him that he] had a recurring brain tumor.... Because it was something [he] had worked for so hard and it was just like it was taken away from [him] for no reason at all." When asked whether he continued to harbor any "upset feelings" about his demotion, Cline answered, "Well, that did play on my mind, yes." Cline's testimony was corroborated by that of Mrs. Cline, who testified that Cline was "very upset and down in the dumps" over his demotion, and that Cline "had been having some outbursts of temper at home...." Likewise, Rieder testified that "Cline was very upset about" the demotion.

■ When viewed in the light most favorable to Cline, the evidence is sufficient to sustain an award of compensatory damages for lost wages and other harm resulting from Cline's demotion. We therefore affirm the district court's denial of JNOV on the issue of liability for compensatory damages. However, because we are not convinced that $117,500 in compensatory damages can be justified on the record presented, we now proceed to consider Wal–Mart's request for a new trial.

This Court has previously explained that "[t]he power and duty of the trial judge to set aside [an excessive] verdict ... is well-established, the exercise of the power being regarded not in derogation of the right of trial by jury but one of the historic safeguards of that right." *Virginian Ry. Co. v. Armentrout,* 166 F.2d 400, 408 (4th Cir.1948) (citations omitted). Because this important obligation extends to appellate courts, "every circuit has said that there are circumstances in which it can reverse the denial of a new trial if the size of the verdict seems to be too far out of line." *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 116 S.Ct. 2211, 2223, 135 L.Ed.2d 659 (1996) (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, Civil 2d § 2820 (1995)).

■■■■ The grant or denial of a motion for new trial is entrusted to the sound discretion of the district court and will be reversed on appeal only upon a showing of abuse of discretion. *See id.* Pursuant to this standard, "[w]e must give the benefit of every doubt to the judgment of the trial judge," while recognizing that "there must be an upper limit [to allowable damages]." *Id.* (quoting *Dagnello v. Long Island R.R. Co.,* 289 F.2d 797, 806 (2d Cir.1961)). The question of whether that limit has been surpassed "is not a question of fact with respect to which reasonable men may differ, but a question of law." *Id.* (quoting *Dagnello,* 289 F.2d at 806).

■■■■ If we conclude that the jury's award of compensatory damages is excessive, we have the option of ordering a new trial nisi remittitur.[2] *See* Wright, Miller, & Kane, 11 Federal Practice and Procedure, Civil 2d § 2820 (1995) ("If the appellate court concludes that the verdict is excessive, it need not necessarily reverse and order a new trial. It may give plaintiff an alternative by ordering a new trial unless plaintiff will consent to a remittitur in a specified amount."). Remittitur, which is used in connection with Fed.R.Civ.P. 59(a), "is a process, dating back to 1822, by which the trial court orders a new trial unless the plaintiff accepts a reduction in an excessive jury award." *Atlas Food,* 99 F.3d at 593 (citation omitted). "[T]he permissibility of remittiturs is now settled." *Id.* (citations omitted). Therefore, if a reviewing court concludes that a verdict is excessive, "it is the court's duty to require a remittitur or order a new trial," *id.* (citing *Linn v. United Plant Guard Workers, Local 114,* 383 U.S. 53, 65–66, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966)), and the failure to do so constitutes an abuse of discretion, *see Virginian Ry. Co.,* 166 F.2d at 408 (citations omitted).

To determine whether the district court abused its discretion in refusing to grant Wal–Mart's motion for a new trial, we apply Fed.R.Civ.P. 59(a) and the standards announced for interpreting it. In *Johnson v. Parrish,* 827 F.2d 988 (4th Cir.1987), we explained that, pursuant to Rule 59, a damages verdict must be set aside if "[1] the verdict is against the clear weight of the evidence, or ■ is based upon evidence which is false, or ■ will result in a miscarriage of justice," *id.* at 991 (quoting *Aetna Casualty & Surety Co. v. Yeatts,* 122 F.2d 350 (4th Cir.1941)). We have since explained that "jury determinations of factual matters such as ... the amount of compensatory damages will be reviewed [under the first two prongs of our standard,] by determining whether the jury's verdict is against the weight of the evidence or based on evidence which is false." *Atlas Food,* 99 F.3d at 594. Such review requires a "comparison of the factual record and the verdict to determine their compatibility." *Id.*

In the present case, we find the jury's award of $117,500 in compensatory damages to be against the weight of the evidence. Although the testimony suggests that Cline suffered some degree of emotional trauma and anxiety as a result of his demotion, there is no evidence that such trauma persisted over time; that it affected Cline's ability to perform his job or to cope with his medical condition; that Cline required counseling or

---

**2.** Although it is now settled that "[n]othing in the Seventh Amendment ... precludes appellate review of the trial judge's denial of a motion to set aside [a jury verdict] as excessive," *Gasperini,* 518 U.S. 415, 116 S.Ct. at 2224 (quoting *Grunenthal v. Long Island R.R. Co.,* 393 U.S. 156, 164, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968) (Stewart, J., dissenting)), we are mindful that our options in remedying an excessive verdict are not unlimited. In *Kennon v. Gilmer,* 131 U.S. 22, 9 S.Ct. 696, 33 L.Ed. 110 (1889), the Supreme Court held that the Seventh Amendment precludes an appellate court from setting aside an award of compensatory damages and replacing it with one of the court's own estimate. In *Defender Indus. v. Northwestern Mutual Life Ins. Co.,* 938 F.2d 502 (4th Cir.1991) (en banc), we extended the rule from *Kennon* to awards of punitive damages, *see id.* at 506, holding that an appellate court violates the Seventh Amendment when it vacates an excessive punitive damages award and enters judgment for a lesser amount, without giving the plaintiff the option of accepting remittitur or a new trial. Therefore, for purposes of avoiding conflict with the Seventh Amendment, the preferable course, upon identifying a jury's award as excessive, is to grant a new trial nisi remittitur, which gives the plaintiff the option of accepting the remittitur or of submitting to a new trial. *See Morgan v. Woessner,* 997 F.2d 1244, 1258 (9th Cir.1993) (citing *Defender Indus.,* 938 F.2d at 507); *McKinnon v. City of Berwyn,* 750 F.2d 1383, 1392 (7th Cir.1984).

medication of any sort; or that Cline suffered physical symptoms of stress, such as depression or loss of sleep. While we emphasize that none of these factors is a prerequisite to the receipt of compensatory damages, their absence reflects a degree of injury incompatible with the jury's sizeable award.

On the evidence presented, we find that $10,000 in compensatory damages is the outermost award that could be sustained. We therefore reduce the award to $10,000 and grant a new trial nisi remittitur at Cline's option.

### B. *Punitive Damages for ADA Claim*

With the passage of the Civil Rights Act of 1991, the ADA entitles a plaintiff to punitive damages if "the respondent engaged in a discriminatory practice ... with malice or with reckless indifference to the [plaintiff's] federally protected rights." 42 U.S.C. § 1981a(b)(1). In *Stephens v. South Atlantic Canners, Inc.*, 848 F.2d 484, 489–90 (4th Cir.1988), we explained that punitive damages are "an extraordinary remedy ... designed to punish and deter particularly egregious conduct." We emphasized that "[a]lthough any form of discrimination constitutes reprehensible and abhorrent conduct, not every lawsuit ... calls for submission of this extraordinary remedy to a jury." *Id.*

In the present case, we believe the record, when viewed in the light most favorable to Cline, contains sufficient evidence to support an award of punitive damages. Cline was demoted from his position as maintenance supervisor without so much as a phone call to warn him that his job would not be waiting upon his return from medical leave. Baxter made no effort to inquire as to Cline's condition, and, in fact, reports from Mary Ellen Cline indicated that Cline's recovery was progressing as scheduled. Thus, Baxter's comment to Rieder and Metje—that Cline might not have the mental capacity to do the supervisor's job—was based on nothing more than Baxter's own ignorance of Cline's condition and his callous indifference to Cline's rights under the ADA. Moreover, Baxter hired Cline's replacement before

Cline had returned from leave, removing any opportunity Cline might have had to prove himself fit for the job. Finally, the record reveals that Baxter's actions were endorsed by Wal–Mart's district manager, Metje, and that Baxter has since misrepresented his reasons for demoting Cline, arguing disingenuously that Cline had violated the terms of his FMLA leave. In light of this evidence, we have no difficulty concluding that Wal–Mart behaved with malice or reckless indifference toward Cline's rights under the ADA and that punitive damages, in some amount, are justified to punish and deter such behavior. We therefore affirm the district court's denial of JNOV.

We next consider whether the district court erred in failing to grant Wal–Mart's motion for a new trial. This requires us, once again, to apply Fed.R.Civ.P. 59(a) and the case law interpreting it. Unlike findings made in the context of compensatory damages, a jury's determination of the amount of punitive damages is not factual. *See Atlas Food,* 99 F.3d at 594. Instead, it is "an almost unconstrained judgment or policy choice about the severity of the penalty to be imposed...." *Id.* Because the factual record alone provides an inadequate foundation for reviewing the size of a punitive damages award, our review of that issue "best utilizes the third prong of the Rule 59 review standard—whether the jury's award will result in a miscarriage of justice." *Id.* (citing *Defender Indus.,* 938 F.2d at 507). Applying this standard, we must compare our "independent judgment" of an appropriate punitive damages award to the award actually given by the jury, to determine whether the award is so excessive as "to work an injustice." *Id.* at 595.

In the present case, we find the jury's award of $182,500 in punitive damages to be excessive. Although Wal–Mart's actions in demoting Cline are sufficiently egregious to justify an award of punitive damages, and the amount of punitive damages should be sufficient to punish and deter Wal–Mart's conduct, we find that an award in the amount given by the jury would result in a miscarriage of justice. Taking into consideration the harm suffered by Cline; the degree of

Wal–Mart's indifference towards Cline's rights under the ADA; and the policy judgments inherent in any award of punitive damages, we find that $50,000 is the outermost punitive damages award that could be sustained. We therefore reduce the award to $50,000 and grant a new trial nisi remittitur at Cline's option.

### C. *Front Pay for FMLA Claim*

Under the FMLA, a victorious plaintiff is entitled to receive damages in the amount of "any wages, salary, employment benefits, or other compensation" that the plaintiff lost as a result of the adverse employment action, *see* 29 U.S.C. § 2617(a)(1)(A)(i)(I), plus "interest ... calculated at the prevailing rate," *see* 29 U.S.C. § 2617(a)(1)(A)(i), (ii). In addition, the plaintiff shall recover "liquidated damages equal to the sum of [the above damages] ... [unless the] employer proves to the satisfaction of the court that the act or omission which violated ... this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of [this title]." 29 U.S.C. § 2617(a)(1)(A)(iii). Finally, a plaintiff is entitled to such equitable relief as the court deems appropriate, "including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B).

In the case at bar, the jury awarded Cline monetary damages in the amount of $156,-801.59, which consisted of $117,500 in front pay and benefits and $34,600 in back pay for the FMLA retaliation claim; $1,100 in back pay for the FMLA restoration claim; and $3,601.59 in total interest for both FMLA claims. In its discretion, the district court awarded Cline an additional $156,801.59 in liquidated damages.

On appeal, Wal–Mart contends that because front pay is an equitable remedy the district court erred in submitting that issue to the jury. In support of that argument, Wal–Mart cites our decision in *Duke v. Uniroyal*, 928 F.2d 1413, 1424 (4th Cir.1991), where we held, in the context of the ADEA, that determinations of front pay are to be made by the district court sitting in equity. Wal–Mart maintains that our holding in *Duke* applies with equal force to the FMLA.

We agree. In *Duke*, we held that front pay, as an alternative or complement to reinstatement, is an equitable remedy best determined by the district court rather than the jury. *See id.* We emphasized that "[t]he infinite variety of factual circumstances that can be anticipated do not render any remedy of front pay susceptible to legal standards for awarding damages." *Id.* We find no reason to deviate from that rule in the context of the FMLA. Therefore, we conclude that the district court erred in submitting the issue of front pay to the jury, and we vacate the jury's award of front pay in the amount of $117,500 and remand for consideration in equity.[3] We further vacate the related liquidated damages award and remand for recalculation, if necessary, consistent with 29 U.S.C. § 2617(a)(1)(A)(iii).

### VI.

In summary, we affirm the district court's grant of summary judgment to Cline on his FMLA restoration claim. We affirm the denial of JNOV or a new trial on Cline's FMLA retaliation and ADA demotion claims. We grant remittitur on the jury's compensatory and punitive damages awards and grant a new trial on those awards at Cline's option. We vacate the award of front pay under the FMLA and remand to the district court for consideration in equity. Finally, we vacate the award of liquidated damages under the FMLA and remand for possible recalculation.

*AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.*

---

**3.** On remand, the district court should determine, in light of our discussion in *Duke*, whether front pay should be awarded and, if so, in what amount. *See* 928 F.2d at 1423–25.