**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WILLOW OAKS ASSOCIATES, a
Virginia Limited Liability Company
t/a Willow Oaks Shopping Center,
*Plaintiff-Appellee,*

v.

FOOD LION, INCORPORATED, a North
Carolina Corporation,
*Defendant-Appellant,*

and

SUPER FRESH FOOD MARKETS OF
VIRGINIA, INCORPORATED, a Delaware
Corporation,
*Defendant &
Third Party Plaintiff,*

RICHFOOD, INCORPORATED; THE GREAT
ATLANTIC AND PACIFIC TEA COMPANY,
INCORPORATED,
*Parties in Interest.*

No. 00-1204

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
Henry C. Morgan Jr., District Judge.
(CA-99-58-4)

Argued: September 28, 2000

Decided: November 20, 2000

Before LUTTIG and KING, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Robert William McFarland, MCGUIRE, WOODS, BAT-
TLE & BOOTHE, L.L.P., Norfolk, Virginia, for Appellant. William
Franklin Devine, HOFHEIMER NUSBAUM, P.C., Norfolk, Virginia,
for Appellee. **ON BRIEF:** Bryan K. Meals, MCGUIRE, WOODS,
BATTLE & BOOTHE, L.L.P., Norfolk, Virginia, for Appellant.
Donna Hughes Latta, HOFHEIMER NUSBAUM, P.C., Norfolk, Vir-
ginia, for Appellee

---

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Food Lion appeals the district court's order granting Willow Oaks'
motion for partial summary judgment. Food Lion contends that there
are genuine issues of material fact as to whether Willow Oaks, the
landlord, properly terminated its lease with its tenant, Super Fresh,
and as to whether Willow Oaks acted within its rights when it refused
to consent to Super Fresh's request for an assignment of the lease to
Food Lion. Food Lion also argues that the district court erred in grant-
ing summary judgment because Willow Oaks was equitably estopped
from recapturing the premises and terminating the lease. Finding no
error, we affirm.

I.

Willow Oaks and Super Fresh were parties to a commercial lease
agreement (the "lease") that allowed Super Fresh to operate a grocery
store in a shopping center owned by Willow Oaks in Newport News,

Virginia. J.A. 20. In December 1998, an agent acting on behalf of Willow Oaks first contacted Food Lion about the possibility of negotiating a lease if Super Fresh shut down, an event that would allow Willow Oaks to recapture the premises 60 days thereafter. J.A. 400-03. Based on several additional contacts with Willow Oaks, Food Lion began preliminary preparations to demolish and rebuild the space in the event that Super Fresh closed its store. J.A. 430-32. In fact, Super Fresh shut down its operations on January 17, 1999, J.A. 278, 280, and expressed no intention to remodel or reopen.

While Food Lion was negotiating with Willow Oaks, it was also simultaneously negotiating for an assignment of Super Fresh's rights under the lease. Pursuant to these latter negotiations, Super Fresh and Food Lion entered into a purchase and sale agreement on February 19, 1999, J.A. 190-236, conveying to Food Lion all of Super Fresh's rights under the lease. J.A. 192-94. On March 8, 1999, fifty days after Super Fresh closed its doors, Super Fresh asked Willow Oaks, in writing, to consent to the assignment of the lease to Food Lion. J.A. 326. Instead of consenting, Willow Oaks terminated the lease by letter on April 6, 1999, pursuant to the lease's recapture provision. J.A. 141-42. The consent to assignment was denied by Willow Oaks, in writing, on that same day, which was the last day it could contractually decline the assignment. J.A. 143-44.

Willow Oaks then filed an action in federal district court, seeking a declaratory judgment that it both possessed and properly exercised its right to terminate the lease, and that such termination extinguished all of Super Fresh's rights under the lease. The district court granted partial summary judgment to Willow Oaks, J.A. 534-39, and Food Lion timely appeals that order. J.A. 542-43.[1]

## II.

Food Lion first argues that the district court, sitting in diversity, erred in granting partial summary judgment to Willow Oaks by not reading the recapture provision in conjunction with other provisions

---

[1]Super Fresh did not appeal and subsequently settled with Willow Oaks, relinquishing all its rights under the lease. *See* Motion to Dismiss, filed July 21, 2000.

in the lease which, Food Lion maintains, limited Willow Oaks' exercise of its recapture right. Reviewing the district court's grant of partial summary judgment de novo, *see Cline* v. *Wal-Mart Stores, Inc.*, 144 F.3d 294, 300 (4th Cir. 1998), and applying Virginia law, we conclude that Willow Oaks was well within its rights in terminating the lease under the recapture provision.

### A.

The propriety of Willow Oaks' termination of the lease is contingent upon its adherence to the express terms of paragraph 31(b) of the lease (the "recapture provision"), which controls the landlord's right to recapture the premises after the tenant shuts down. That provision provides, in pertinent part:

> Notwithstanding the foregoing, if Tenant shall *cease operating its business* within Demised Premises *for a period of more than sixty (60) days* for any reason *other than causes beyond the control of the Tenant*, including, without limitation, war, riot, civil insurrection, labor disputes, acts of God, fire or other casualty, taking by eminent domain, or any other cause not solely within the control of Tenant (and further including for purposes of this paragraph, any remodeling of Demised Premises), Landlord may, at its option, at any time thereafter, *so long as Tenant does not resume its operations within Demised Premises, terminate this Lease by written notice* delivered to Tenant whereupon this lease shall expire as though the date of such notice were the date herein set forth for expiration of the term hereof and the parties hereto shall be released and relieved of and from any and all further liability hereunder.

J.A. 46 (emphases added). Under a plain reading of this provision, a landlord may recapture the premises where the tenant ceases operating: (1) for a period of more than sixty days without resuming operations; and (2) for any reason within its control.

First, the recapture provision required Willow Oaks to wait until Super Fresh had been closed for more than 60 days before exercising its recapture right, provided that the "[t]enant [did] not resume its

operations within Demised premises" during that period. J.A. 46. Super Fresh never resumed its operations at any time after January 17. As a result, Willow Oaks satisfied the first requirement because it terminated the lease on April 6, precisely 79 days following Super Fresh's closure.

The second requirement of the recapture provision was also fulfilled because Super Fresh's decision to shut down was based upon its inability to operate profitably, a factor that was within its control. J.A. 190. Food Lion argues that once Super Fresh requested consent to assignment of the lease to Food Lion, the decision about whether anyone operated on the premises was solely within Willow Oaks' control. Specifically, Food Lion contends that it could not open a store or begin remodeling until Willow Oaks approved the assignment. This contention, however, ignores the fact that Food Lion was never the tenant under the lease and therefore had no rights at all. As the district court noted, "[t]he proper focus of this inquiry concerns the actions taken by Super Fresh, the actual tenant, during the sixty day recapture period." J.A. 550. Nothing prevented Super Fresh, the actual tenant, from either reopening its store or beginning Food Lion's proposed remodeling project while awaiting Willow Oaks' consent. Either action could have prevented Willow Oaks from recapturing the premises.

Because the decisions to close and remain closed were within Super Fresh's control, and Super Fresh remained continuously closed for more than sixty days prior to the termination, Willow Oaks fully complied with the terms of the recapture provision.

### B.

In a further attempt to defeat summary judgment, Food Lion relies on two generally applicable lease provisions to establish that Willow Oaks breached the contract when it terminated the lease. Food Lion's contention of breach is without merit, however, because neither provision in any way modifies the plain language of the recapture provision or places any independent obligations upon Willow Oaks' exercise of the recapture right.

First, Food Lion maintains, relying on paragraph nine of the lease, that Willow Oaks had an affirmative duty to consent to any assign-

ment absent a "reasonable basis for withholding such consent." J.A. 26 (quoting paragraph nine of lease). While Food Lion is correct that paragraph nine does create such a duty, that provision provides Willow Oaks with 30 days to respond "after Tenant notifies Landlord of such contemplated assignment . . . ." *Id*. Willow Oaks complied with that requirement by informing Super Fresh on the twenty-ninth day, via letter, that it would not consent to the assignment because it had exercised its right to terminate the lease under the recapture provision. Willow Oaks' exercise of its express recapture right certainly provides a "reasonable basis for withholding such consent," because there was literally no lease to assign once it was duly terminated.

Second, Food Lion argues that paragraph 20 of the lease modifies the recapture provision by requiring the landlord to notify the tenant of any default, and granting the tenant 30 days to cure it.[2] The general default procedures do not apply, however, to the landlord's exercise of its recapture right. The last sentence of the default provision specifically *prohibits* the landlord from terminating the lease in response to an uncured default. In contrast, termination of the lease is the *only* remedy in the recapture provision. In order to avoid an irreconcilable conflict, the only reasonable reading is that the tenant's failure to

---

[2]Paragraph 20 of the lease provides:

> If tenant *shall default in the performance* of any of the terms or provisions of this Lease, other than the payment of rent, and *if Landlord shall give to the Tenant written notice* of such default and if Tenant shall fail to cure such default *within thirty (30) days after receipt of such notice*, *or if the default is of such a character as to require more than thirty (30) days to cure, then, if Tenant shall fail to use reasonable diligence in curing such default*, Landlord may cure such default for the account of and at the cost and expense of Tenant and the sum so expended by Landlord shall be deemed to be additional rent and on demand shall be paid by Tenant on the day when rent shall next become due and payable, and Landlord may further take such proceedings at law or in equity as Landlord deems necessary. In no event, however, shall any default under the terms of this Section be the basis of forfeiture of this lease or otherwise result in the eviction of the Tenant or the termination of this lease.

J.A. 36 (emphases added).

operate is not a default under the lease and, therefore, paragraph 20 of the lease does not apply. *See Chantilly Const. Corp.* v. *Commonwealth, Dep't of Highways & Transp.*, 6 Va. App. 282, 293 (1988) ("[A]ll of the provisions of a contract should be construed together and those which appear to conflict should be harmonized whenever it is reasonably possible.").

In sum, Willow Oaks justifiably terminated the lease following Super Fresh's failure to operate for more than 60 days because neither generally applicable lease provision modified the recapture right or limited its application in any way.

## III.

Food Lion's final contention on appeal — that Willow Oaks was equitably estopped from exercising its recapture right —fails because the record confirms that Willow Oaks' conduct and statements were insufficient, as a matter of law, to induce reasonable reliance on Food Lion's part.

Under Virginia law, an equitable estoppel claim requires "either conduct [that] has been such as to induce another to change his position in good faith or such that a reasonable man would rely upon the representations made." *United States* v. *Fidelity & Casualty Co. of New York*, 402 F.2d 893, 898 (4th Cir. 1968) (cited with approval in *T* v. *T*, 216 Va. 867, 873 (1976)). Food Lion cites various statements by its own real estate representative, William Kepley, to support its equitable estoppel claim. Kepley testified that: (1) Willow Oaks "talked about how much they wanted [Food Lion] in there and how perfect they thought we were," J.A. 403; (2) Willow Oaks "wanted [Food Lion] in there," J.A. 412; and (3) Willow Oaks knew about Food Lion's plan to renovate the space and "agreed with [Food Lion] that it was the best thing to do." J.A. 413.

These self-serving statements, however, are insufficient to defeat summary judgment because they are merely words of negotiation, confirming that Willow Oaks was interested in eventually striking a deal with Food Lion, and if a deal could be consummated, having Food Lion remodel the space. Willow Oaks never agreed to negotiate exclusively with Food Lion, and Kepley testified that Food Lion was

aware of that fact. J.A. 402-03, 437. Furthermore, Willow Oaks informed Food Lion on at least two occasions that it possessed a recapture right under the existing lease with Super Fresh. J.A. 308, 350, 399-400, 419-20. It is unsurprising, therefore, that Food Lion's own conduct also undermines its claim, as Food Lion continued to negotiate with Super Fresh for an assignment of the lease even after the statements that allegedly induced reliance were made by Willow Oaks. Accordingly, because Food Lion failed to show reasonable reliance, we hold that the district court did not err in granting summary judgment to Willow Oaks on Food Lion's equitable estoppel claim.

## *CONCLUSION*

For the reasons stated herein, the judgment of the district court is affirmed.

*AFFIRMED*