UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

POMEROY, INCORPORATED, d/b/a
Unique Balance, a Delaware
Corporation,
                *Plaintiff-Appellee,*

v.

FOUR JAKS, INCORPORATED, a West
Virginia Corporation; LAPIED,
INCORPORATED, a West Virginia
Corporation; GENE BEARD; MARY
ALICE BEARD; SCOTT BEARD; JAMES
PIERCE,                                              No. 00-2259
                *Defendants-Appellants,*

                and

MATTHEW R. TUCKWILLER, a/k/a Matt
Tuckwiller; CITY NATIONAL BANK OF
WEST VIRGINIA,
                *Parties in Interest.*

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
David A. Faber, District Judge.
(CA-99-93-5)

Argued: May 7, 2001

Decided: June 4, 2001

Before WILKINSON, Chief Judge, and WILLIAMS and
MOTZ, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** James Byron Lees, Jr., HUNT & LEES, L.C., Charleston, West Virginia, for Appellants. Mark E. Troy, PULLIN, KNOPF, FOWLER & FLANAGAN, P.L.L.C., Charleston, West Virginia, for Appellee. **ON BRIEF:** Gary E. Pullin, PULLIN, KNOPF, FOWLER & FLANAGAN, P.L.L.C., Charleston, West Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

After trial in this diversity case, the jury awarded substantial damages to the plaintiff, Pomeroy, Incorporated, doing business as Unique Balance ("Unique"). The defendants — Four Jaks, Incorporated, Lapied, Incorporated, Gene, Mary Alice, and Scott Beard, and James Pierce — appeal. We affirm in part, vacate in part, and remand.

I.

In 1966, Rex Cross, the owner and chairman of Unique, hired Gene Beard to work as a salesman for Unique, which makes various window parts. By the 1980s, Gene Beard was charged with overall sales for Unique. In 1982, Gene and his wife, Mary Alice, started Lapied, which assembled window parts for Unique out of the Beards' home. Three years later, Lapied moved its operation to Unique's facility in Ronceverte, West Virginia.

In 1995, Gene's son, Scott, started Four Jaks, which made injection plastic molding and other window parts. Mary Alice was the President of Four Jaks, and her son-in-law, James Pierce, also helped to manage the Four Jaks operation. From 1995 to the end of 1998, Gene, Mary Alice, Scott, and James were also Unique employees, working in the Ronceverte facility.

On December 30, 1998, Unique Balance discharged Gene, Scott, and James. A month later, on February 4, 1999, Unique filed this suit alleging conversion, tortious interference, and conspiracy to commit those torts. Unique claimed that the defendants "misappropriate[d]" its "funds, goods, services and equipment," and "intentionally interfere[d]" with Unique's business causing Unique to "suffer a loss of customers and profits." Basically, Unique asserted that the defendants diverted business and customers from Unique to Four Jaks, used Unique materials and employees to make Four Jaks's products, and spent much of their time as paid Unique employees working for Four Jaks. The jury returned a verdict for Unique and held each of the six defendants liable for $100,000 in damages, for a total award of $600,000. This appeal followed.

## II.

The defendants maintain that the district court erred by allowing Unique to amend its complaint, following the presentation of its evidence, to include a claim of breach of fiduciary duty against Gene Beard. They also contend that West Virginia does not recognize a claim for breach of fiduciary duty by one in Gene Beard's position.

With respect to the amendment, the district court acted within its discretion, *see* Fed. R. Civ. P. 15(b), in permitting the amendment. Moreover, Gene Beard has demonstrated no prejudice suffered from the amendment. The evidence used to support the amended claim was virtually the same evidence used to support the conversion and tortious interference claims.

As to the substance of the breach of fiduciary duty claim, the defendants maintain that West Virginia would not recognize such a claim against Gene Beard because he was not a corporate officer or director of Unique and owed no fiduciary duty to the company. They

cite no authority for this contention, but even assuming that West Virginia holds only corporate officers or directors to a fiduciary duty, Gene Beard meets that criterion.

West Virginia case law provides no assistance in defining a corporate officer, but Black's Law Dictionary defines corporate officers as:

> Those persons who fill the offices which are provided for in the corporate charter such as president, treasurer, etc., though in a broader sense the term includes vice presidents, general manager and other officials of the corporation.

Black's Law Dictionary 340 (6th ed. 1990).

Gene Beard acknowledged that he held the title of "Vice President" and was also a "Secretary" of Pomeroy, Inc. and Pomeroy Transportation. Although the trial transcript is not clear, Beard may have also admitted that he was an "[o]fficer of Unique Balance and Pomeroy." However, in testimony on which the defendants now heavily rely, Beard also testified that he was only a salesman and that Cross did not appoint him to be a true vice president, but placed the title of "Vice President" on Beard's business cards for appearances. Even so, Gene Beard clearly admitted that he "was the general manager and that [he] had the right to do whatever [he] felt was proper." Furthermore, Cross testified that Gene had "total authority" over operations in the West Virginia facility. Thus, regardless of his title, Gene Beard was in a position to make the decisions to turn away Unique customers or send them to Four Jaks. This decision-making power comes with a fiduciary duty to use it for the benefit of the company.

### III.

The defendants also challenge numerous evidentiary rulings of the district court. We have considered them all and found them all meritless. The majority of them do not require discussion. The two most substantial are the district court's asserted errors in not forcing Unique to produce (a) a "report" allegedly created by Unique's attorney, Marshall Goldberg, and (b) sworn witness statements.

Cross testified that no written Goldberg report existed, because Goldberg simply told Cross orally of his investigatory findings. The defendants proffered no contrary evidence. Indeed, after asking Cross point blank whether there was a written report, the defendants' trial counsel seemed satisfied that no such report existed, remarking "[i]f they are representing there is no written report, then there is no written report." The district court did not err in failing to compel production of a nonexistent report.

As for the sworn statements of certain witnesses, defendants did receive these statements prior to cross-examining Unique's expert, Robert Griffith, who had relied on them. Moreover, when the district court offered the defendants the opportunity to ask for a mistrial, they rejected that course.* They, therefore, cannot now claim that any error in failing to provide the witness statements sooner requires reversal.

## IV.

James Pierce also challenges the sufficiency of the evidence against him. The record reveals ample evidence that he was involved in the same conspiracy and wrongdoing as the other defendants. For example, Unique employee Tammy White testified that she was told to make parts for Four Jaks while on Unique's payroll, that Pierce told her that these parts were for Four Jaks, and that Pierce also asked her to hide "parts that [she] had r[u]n for Four Jaks," so Cross would not see them. White further testified that she saw Pierce "run" these same parts himself. Moreover, Pierce told White to take raw materials from the Unique Balance plant to the Four Jaks plant.

## V.

Finally, the defendants challenge the jury verdict on two grounds.

---

*That is not to say that the district court would or should have granted a mistrial, but just that the judge did specifically ask, "what's your remedy now? Are you moving for a mistrial?" To which the defendants' trial counsel answered, "No; there is no remedy now."

First, they contend that the "jury did not understand the word 'apportion,'" and thus "intended to award a total of $100,000.00 in this matter," rather than $100,000 against each defendant for a total of $600,000. The verdict form stated "[w]e find that the plaintiff is entitled to damages in the following *amounts* from the following *defendants*. (Emphasis added). This language clearly indicates that the jury meant to hold each defendant liable for the amount of $100,000. This is especially true in light of the judge's clarification that the jury could "apportion the award or not apportion it *among the defendants* as you see fit." (Emphasis omitted). For these reasons, we find this contention meritless.

Second, the defendants maintain that Unique offered no evidence to sustain a $600,000 verdict. We have searched the record and, with this argument, we must agree. Unique proffered evidence in the form of expert testimony, which, if believed, permitted the jury to award damages in the maximum amount of $559,204. When "a reviewing court concludes that a verdict is excessive, it is the court's duty to require a remittitur or order a new trial." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998) (internal quotation marks omitted). Because on the evidence presented here, $559,204 is the "outermost award that could be sustained," *id.* at 306, we vacate the damages award and remand for a new trial unless Unique Balance agrees to remittitur of the $600,000 damages award to $559,204.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED*