**Yolanda HOLMES**

v.

**E.SPIRE COMMUNICATIONS, INC., et al.**

**No. Civ.A. DKC 99–2011.**

United States District Court, D. Maryland.

March 15, 2001.

our finding above that claims against Van Nguyen and Patel are time-barred.

John M. Seeberger, Law Office of John M. Seeberger, Baltimore, MD, for plaintiff.

David S. Coaxum, Annapolis Junction, MD, Randall E. Robertson, Miller, Canfield, Paddock and Stone, PLC, Washington, DC, for defendants.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Plaintiff, Yolanda Holmes, filed suit against Defendants, e.spire Communications, Inc. ("e.spire") and American Communications Services, Inc. ("ASCI"), in the Circuit Court for Prince George's County alleging sex and pregnancy discrimination in violation of Title VII of the Civil Rights Act and the Family Medical Leave Act ("FMLA").[1] Defendants removed the case to this court. Currently pending and ready for resolution are Plaintiff's first motion for summary judgment (Paper No. 32), Defendants' motion to withdraw admissions (Paper No. 34), Defendants' motion for summary judgment (Paper No. 40), and Plaintiff's second motion for summary judgment (Paper No. 41). No hearing is deemed necessary. Local Rule 105.6. For the reasons set forth below, Plaintiff's first motion for summary judgment is denied; Defendants' motion to withdraw admissions is denied as moot; Plaintiff's second motion for summary judgment is denied; and Defendants' motion for summary judgment is granted.

---

1. Plaintiff's complaint also alleges wrongful discharge under Maryland common law. Defendants' motion to dismiss that claim was granted (Paper No. 30), leaving only Plaintiff's Title VII and FMLA claims.

## I. *Background.*

In July 1996, Plaintiff was hired by Defendants as a full-time accounts payable clerk.[2] Prior to this, she worked as a temporary employee for Defendants. In the fall of 1997, Plaintiff learned she was pregnant and would give birth in March 1998. She communicated this information to Defendants. Plaintiff alleges that she was advised that she would receive six weeks of maternity leave that would begin after the birth of her child. Plaintiff also alleges that she was informed that her six week leave would not be reduced in any fashion.

On December 23, 1997, as Plaintiff was beginning a scheduled vacation from work, she was informed by her doctor that she would require bed rest for the remainder of her pregnancy. She notified Defendants of her medical situation and took medical leave, which was approved by Defendants. Plaintiff claims she was told that her position would remain open pending her return from leave, but that Defendants replaced her with a full-time accounts payable clerk shortly after her leave began. Plaintiff claims that she communicated frequently with Defendants' human resources department during her leave.

Plaintiff gave birth on March 5, 1998. Eight days later, on March 13, 1998, Plaintiff received a telephone call from Defendants instructing her to return to work by March 17, 1998 or risk termination. This information, according to Plaintiff, was contrary to her understanding that she would have six weeks of maternity leave following the delivery of her child and that her post-delivery maternity leave would not be reduced by her pre-delivery medical leave. Plaintiff claims that she requested to use her accumulated vacation time, approximately 62 hours, to extend her leave beyond March 17, but her request was denied.

Plaintiff alleges Defendants were advised by her doctor that she was under a continuing disability as the result of recently giving birth and would require accommodations, such as working at home a few hours a day, if she was to return to work so soon after the delivery. Plaintiff claims that despite her efforts to work out a reasonable accommodation, she was terminated from her position on March 17, 1998, because of her pregnancy, child birth, and pregnancy-related medical condition.

On the basis of these allegations, Plaintiff asserts claims for sex and pregnancy discrimination in violation of Title VII and the FMLA. Plaintiff moved for summary judgment on her second count—violation of the FMLA—on the basis of facts that were deemed admitted due to Defendants' failure to respond to requests for admission. Defendants, in turn, moved to withdraw those admissions and moved for summary judgment on both of Plaintiff's counts. Plaintiff subsequently filed a cross motion for summary judgment on both counts.

## II. *Summary Judgment Standard.*

Summary judgment is appropriate when (1) there is no genuine issue of material fact and (2) the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990). A genuine dispute exists if a reasonable factfinder could return a verdict for the non-

---

**2.** ASCI and e.spire are the same entity. The company was operating as ASCI when Plaintiff was hired and changed its name to e.spire at or around the time of the events giving rise to Plaintiff's complaint.

moving party. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. Only disputes over facts that might affect the outcome of the case under governing law will preclude summary judgment. *Id.* at 252, 106 S.Ct. 2505; *Thompson Everett, Inc. v. National Cable Advertising,* 57 F.3d 1317, 1323 (4th Cir.1995).

The moving party bears the initial burden of demonstrating that there is no genuine issue as to any material fact. *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979). The moving party may meet this burden by demonstrating the absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party then must, through affidavits or other kinds of evidentiary material listed in Rule 56(c), demonstrate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. The non-moving party cannot rely on "the mere pleadings themselves," or simply set forth speculation, allegations, or denials to demonstrate genuine issues of fact. *Id.*

The court must not weigh the evidence. Rather, the court must determine whether enough evidence exists to enable a reasonable factfinder to find in favor of the non-moving party. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. The court must view all facts and inferences most favorably to the non-moving party, who is entitled to have the credibility of his evidence assumed, his version of events in dispute accepted, and internal conflicts resolved in his favor. *Charbonnages de France,* 597 F.2d at 414. The non-moving party, however, is only entitled to inferences that "fall within the range of reasonable probability." *Thompson Everett,* 57 F.3d at 1323.

### III. *Discussion.*

#### A. Cross motions for summary judgment.

Both parties have filed motions for summary judgment. Plaintiff contends that the evidence establishes intentional discrimination on the part of Defendants in violation of Title VII and the Pregnancy Discrimination Act ("PDA"). She argues that Defendants' proffered nondiscriminatory reason for her termination—the alleged expiration of her FMLA leave—is merely a pretext for discrimination. Plaintiff also alleges that Defendants violated the FMLA when they terminated her. Defendants argue that Plaintiff failed to establish a prima facie case of Title VII pregnancy discrimination, and that even if a prima facie case has been shown, Plaintiff failed to offer any evidence that Defendants' proffered reason for her termination was a pretext for discrimination. Finally, Defendants argue that Plaintiff failed to establish a prima facie case of an FMLA violation.

#### 1. Title VII Pregnancy Discrimination.

As explained in the following discussion, Plaintiff has failed to establish a prima facie case of Title VII pregnancy discrimination because she has not offered evidence that Defendants treated similarly situated nonpregnant employees more favorably than pregnant employees.[3] Even assuming Plaintiff established a prima facie case, she cannot show that the proffered nondiscriminatory reason for Plaintiff's termination—her alleged exhaustion of FMLA leave—was actually a pretext for intentional discrimination.

---

**3.** Plaintiff also alleged sex discrimination. She has not, however, provided any evidence to establish a prima facie case or even attempted to support a claim for discrimination on any basis other than pregnancy.

■ The Pregnancy Discrimination Act ("PDA"), an amendment to Title VII of the Civil Rights Act of 1964, states, in relevant part, that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). "A claim of discrimination on the basis of pregnancy must be analyzed in the same manner as any other sex discrimination claim brought pursuant to Title VII." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 297 (4th Cir.1998) (internal quotation marks omitted) (quoting *Boyd v. Harding Academy*, 88 F.3d 410, 413 (6th Cir.1996)). Plaintiff thus bears the burden of showing that she was a victim of intentional discrimination. *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Additionally, Plaintiff bears the burden of establishing that Defendants discriminated against her "because of her pregnancy." *See id.;* 42 U.S.C. §§ 2000e–2(a)(1) & (2).

To survive summary judgment, Plaintiff must establish her Title VII discrimination case by one of two methods. First, Plaintiff can utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir.1999) (internal quotation marks omitted) (citations omitted). Under this approach, Ms. Holmes would have to produce "direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Id.* (internal quotation marks omitted) (quoting *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir.1988)). Plaintiff has not proffered any proof that directly reflects any discriminatory attitude or intent on the part of Defendants, let alone any nexus between a discriminatory attitude and an adverse employment action. *See id.* at 608 (explaining that under the direct and indirect basis, a plaintiff must produce evidence that clearly indicates a nexus between discriminatory attitude and the employment action (citing *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir.1995)); *EEOC v. Clay Printing*, 955 F.2d 936, 942 (4th Cir.1992)).

■ Under the second method of proof, the *McDonnell Douglas* framework, Plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Brinkley*, 180 F.3d at 607. To establish a prima facie case of pregnancy discrimination, Plaintiff must demonstrate that (1) she was pregnant; (2) she suffered an adverse employment action; (3) at the time of the adverse employment action she was performing her job satisfactorily; and (4) the position remained open or was filled by a similarly qualified applicant outside of the protected class-someone not pregnant. *See Brinkley*, 180 F.3d at 607. Some courts have framed the fourth inquiry to require a PDA plaintiff to offer evidence of disparate treatment, which means showing that the defendant treated similarly situated nonpregnant employees more favorably. *See Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1154–55 (7th Cir.1997); *EEOC v. Lutheran Family Services*, 884 F.Supp. 1022, 1028 (E.D.N.C.1994). The question under either approach is whether there is evidence that the defendant treated similarly situated nonpregnant employees more favorably, either by placing them in the position formerly held by the pregnant employee, or by not terminating them or taking adverse employment actions when encountered with a situation similar to the plaintiff

employee's.[4]

If the prima facie case is successfully established, a rebuttable presumption that Defendants unlawfully discriminated is created, and the burden of production shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the Defendants provide such a reason, the burden shifts back to Plaintiff to show that the reason proffered by Defendants is actually a pretext for impermissible discrimination. *Id.* at 507–08, 113 S.Ct. 2742. *See also, Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2108–09, 147 L.Ed.2d 105 (2000) (explaining a plaintiff's evidentiary burden).

There is no dispute that Plaintiff was pregnant, and thus, a member of the protected class. There is also no dispute that she was terminated, and that at the time of termination she was performing her job within the legitimate expectations of Defendants. Plaintiff, however, offers no evidence that Defendants treated nonpregnant employees more favorably than pregnant employees, or that Defendants filled Plaintiff's position with a nonpregnant employee.[5] Rather, she summarily contends that she need not show that Defendants treated nonpregnant employees more favorably because "Defendants admit that they terminated the Plaintiff for reasons related to her pregnancy, and the notion that she was terminated under the FMLA is a pretext." *Pl.'s Reply Mem., 2nd Summ.J.*, at 5 (Paper No. 48). Defendants, however, make no such admission. Moreover, an inquiry into pretext does not occur until after a plaintiff has established a prima facie case. It is therefore irrelevant at this stage.

Plaintiff also asserts that Defendants failed to extend to her the same benefits that they provided to other temporarily disabled employees. As evidence, Plaintiff offers an email, sent between two of Defendants' employees, David Coaxum and Andrea Colbert, that inquired as to the "reasons why each of the [employees listed] ... were [sic] allowed to extend their leave beyond the FMLA leave." *Pl.'s 2nd Mot.Summ.J., Ex. 5*. The email provided the names of seven female employees, all of whom, it could be inferred, were allowed to take leave beyond the amount provided by the FMLA without being terminated.

---

4. The Fourth Circuit has recognized that because a particular prima facie case may vary depending on the relevant facts and context of the situation, a plaintiff may also have the option of satisfying the fourth inquiry by establishing that the adverse employment action occurred under circumstances that give rise to a reasonable inference of discrimination. *See Taylor v. Virginia Union Univ.*, 193 F.3d 219, 230 (4th Cir.1999) (applying in failure to promote case); *Brown v. McLean*, 159 F.3d 898, 902, 905 (4th Cir.1998) (adapting the fourth prong to the facts of a gender discrimination claim and providing an example of when adaptation of the prong of a prima facie age discrimination claim would be necessary); *Glunt v. GES Exposition Servs., Inc.*, 123 F.Supp.2d 847, 865–66 (D.Md.2000); *see also Kerzer v. Kingly Mfg.*, 156 F.3d 396, 401 (2d Cir.1998) (explaining that, in some circumstances, "a plaintiff may establish a *prima facie* case by demonstrating that the discharge occurred in circumstances giving rise to an inference of unlawful discrimination" (citations omitted)).

5. Plaintiff contends that the exhibits clarify that her position was "held open and filled". *Pl.'s 2nd Mot.Summ.J.*, at 5–6. The only evidence she offers for this proposition is the deposition testimony of Defendants' corporate designee, who, when asked "[w]hen was Ms. Holmes' position filled by someone else?" answered that she didn't know. She was never asked who filled the position. *Id.* at 3, *Ex. 1*, at 54–56. Plaintiff has not, therefore, offered evidence to show that her position was filled by someone who was not pregnant.

In response, Defendants have provided an affidavit of their Director of Human Resources, Cathy Boland, which states that each of these seven women was on leave due to pregnancy or a pregnancy related condition. *Defs.' Opp'n to Pl.'s 2nd Summ.J.Mot., Ex. 1.* In sum, this evidence may show how other pregnant employees were treated but does not show how anyone outside of Plaintiff's class was treated.

■ Plaintiff's only other "evidence" that Defendants treated nonpregnant employees more favorably is Plaintiff's deposition testimony that "[to] her knowledge" a female co-worker, Kena Drew, had a "disease" and "got to be out more than 12 weeks in a year and return back to work." *Pl.'s Reply Mem.Supp. 2nd Mot.Summ.J.,* at 7; *Pl.'s 2nd Mot.Summ.J., Ex. 4, Dep. of Yolanda Holmes,* at 54. Plaintiff concluded that Ms. Drew must have been out more than 12 weeks because she "noticed that she was absent for a long period of time." *Id.* at 78. Plaintiff cannot demonstrate a dispute as to a genuine issue of fact by simply setting forth unsubstantiated speculation and allegations. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Under the PDA and Title VII, an employer is barred from treating a woman who is pregnant differently for employment purposes than those employees who are not pregnant. 42 U.S.C. § 2000e(k). Plaintiff has offered no evidence to support the conclusion that she was treated differently than nonpregnant employees. As such, she has failed to establish disparate treatment or that her termination occurred under circumstances giving rise to a reasonable inference of discrimination.

■ Even if Plaintiff had established a prima facie case, she has not offered evidence that Defendants' reason for her termination was actually a pretext for intentional discrimination. Defendants' corporate designee, Cathy Boland, testified that Plaintiff was terminated for the sole reason that she could not return to work upon the expiration of her FMLA leave. *See Defs.' Mot.Summ.J., Ex. 2, Dep. of Catherine Boland,* at 81–82. Ms. Boland calculated Plaintiff's FMLA leave from December 23, 1997, and concluded that it expired on March 16, 1998. *Id.* at 81–82. Plaintiff disputes this calculation of her FMLA leave. Under Plaintiff's calculation, her FMLA leave began on January 7, 1998 and thus expired on March 31, 1998. Thus, under Plaintiff's calculation, Defendants fired Plaintiff before her leave expired. From this she concludes that Defendants' proffered reason is a pretext.

When reviewing a Defendants' proffered reason for discharge and a plaintiff's corresponding claim of pretext, the court must "keep in mind that Title VII is not a vehicle for substituting the judgment of a court for that of the employer." *DeJarnette,* 133 F.3d at 298–99 (internal quotation marks omitted) (quoting *Jiminez v. Mary Washington College,* 57 F.3d 369, 377 (4th Cir.1995)). The court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions." *Id.* at 299 (internal quotation marks omitted) (quoting *Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 410 (7th Cir.1997)). Thus, once Defendants articulated a non-discriminatory reason for Plaintiff's termination, expiration of FMLA leave, it did not become this court's "province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for plaintiff's termination." *DeJarnette,* 133 F.3d at 299 (internal quotation marks omitted) (emphasis added) (quoting *Giannopoulos,* 109 F.3d at 410–11).

Plaintiff failed to offer any evidence that Defendants proffered reason for termi-

nation—their belief that her FMLA leave had expired and that she could not return to work—was false. Taking the evidence in the light most favorable to Plaintiff, it shows that Defendants miscalculated Plaintiff's FMLA leave. Plaintiff's speculation that Defendants' alleged mistake must be a pretext is not sufficient evidence sustain a claim under Title VII.[6]

## 2. FMLA.

Plaintiff argues that Defendants are liable under the FMLA for failing to restore her to her former position. Defendants contend that they were not obligated to restore Plaintiff to her former position because, upon the expiration of her FMLA leave, she was not able to return to work. The parties dispute the dates Plaintiff's FMLA leave began and expired, as well as the date Plaintiff was able to return to work.

Defendants contend that Plaintiff's FMLA leave began on December 23, 1997 and expired on March 16, 1998. Plaintiff contends that her FMLA leave did not begin until January 7, 1998 and thus did not end until March 31, 1998. It is not disputed that Plaintiff was pre-approved

for vacation from December 23, 1997 through January 6, 1998, and learned during that time that she would not be able to return to work due to a pregnancy related disability; rather, the parties dispute whether that vacation period counts toward Plaintiff's FMLA leave.

■ The FMLA provides that an eligible employee[7] must be allowed to take up to twelve work weeks of leave during any twelve-month period because of a serious health condition that prevents the employee from performing his or her job. 29 U.S.C. § 2612(a)(1)(D). Under the FMLA, Defendants were entitled to require Plaintiff to substitute her vacation leave for FMLA leave. 29 U.S.C. § 2612(d)(2); *Cline v. Wal–Mart Stores, Inc.*, 144 F.3d 294, 300 (4th Cir.1998). However, under the regulations promulgated under the FMLA, Defendants were required to "promptly (within two business days absent extenuating circumstances) notify [Plaintiff] that the paid leave [was] designated and [would] be counted as FMLA leave." 29 C.F.R. 825.208(b); *Cline*, 144 F.3d at 300.[8] The record is devoid of any proof that Defendants pro-

---

**6.** In *Reeves,* the Supreme Court clarified that it is "permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id.* at 2108; *see Rowe v. Marley Co.,* 233 F.3d 825, 830 (4th Cir.2000). Thus, "a plaintiff's prima facie case, combined with *sufficient evidence to find that the employer's asserted justification is false,* may permit the trier of fact to conclude that the employer unlawfully discriminated". *Reeves,* 120 S.Ct. at 2102 (emphasis added); *see Rowe,* 233 F.3d at 830. Here, there is an allegation of error but not of falsehood.

**7.** An "eligible employee" is one who has been employed for more than twelve months before requesting leave under the FMLA, and has worked at least 1,250 hours within that period. 29 U.S.C. § 2611(2)(A). There is no dispute that Plaintiff was an "eligible employee."

**8.** Some courts have concluded that·the notice provisions articulated in the C.F.R. are invalid because they attempt to expand an employee's FMLA leave beyond twelve weeks. *See e.g., McGregor v. Autozone, Inc.,* 180 F.3d 1305, 1307–08 (11th Cir.1999) (finding that the provisions of 29 C.F.R. § 825.208 that require additional notice of substitution of paid leave for FMLA leave are "invalid and unenforceable," and explaining that if an employer exercises its right to require an employee to substitute paid leave, and the employee is absent for more than the protected twelve week period, then she has no right to bring suit under the FMLA). As *Cline* indicates, the Fourth Circuit has not adopted this view.

vided such notice. The only notice Defendants contend Plaintiff received was that of their general policy, articulated in their handbook, and a phone call, admittedly placed on March 13, 1998, informing Plaintiff that if she did not return to work by March 17, she would be fired. *Defs.' Mem. Opp'n Pl.'s 1st Mot.Summ.J.*, at 15; *Defs.' Mot.Summ.J., Ex. 2, Dep of Cathy Boland*, at 49, 61–66. In other words, although Defendants could have required Plaintiff to use vacation or other leave as FMLA leave, that option was waived when they failed to give proper notice of their intentions. *Cline*, 144 F.3d at 300. In the absence of proper notice that her FMLA leave began on December 23, Plaintiff was entitled to twelve weeks of FMLA leave beginning on January 7, 1998, and ending on March 31, 1998. *See id.* at 301.[9]

Under the FMLA, an eligible employee is entitled, upon return from FMLA leave, to be restored "to the position of employment held ... when the leave commenced." 29 U.S.C. § 2614(a)(1)(A). If an employee is unable to "perform an essential function" of her job "because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA." 29

C.F.R. § 825.214(b); *see also Sarno*, 183 F.3d at 161–62 (2d Cir.1999) (explaining that if, at the end of the FMLA's twelve week leave period, an employee is unable to perform the essential functions of her former job, then "[a]ny lack of notice of the statutory twelve week limitation on FMLA leave could not rationally be found to have impeded" the employee's return to work). If, however, Plaintiff was able to return to work upon the expiration of her FMLA, then Defendants are liable for failing to restore her to her former position. 29 U.S.C. § 2614(a)(1)(A).

Plaintiff claims that had she known that her FMLA leave expired on March 31, 1998, "it is reasonable to infer that ... Plaintiff, to save her job, could have returned to work, albeit not the ideal or planned time frame." *Pl.'s Opp'n Defs.' Summ.J.*, at 5. Plaintiff argues that "it is quite likely and reasonable to conclude that with the additional two weeks, and faced with the choice of losing her job or providing for her children, that [Plaintiff] would had to have returned." *Pl.'s Reply Defs.' Mot.Summ.J.*, at 3. This argument is flatly contradicted by the evidence, for Plaintiff's own deposition testimony establishes that she was unable to return to work on March 31, 1998. When asked

---

9. The absence of notice is not, in and of itself, a violation of the FMLA. As the Eighth Circuit recognized, failure to give proper notice is a valid basis for suit only if that failure functioned to "interfere with or deny an employee's substantive FMLA rights." *Ragsdale v. Wolverine Worldwide, Inc.*, 218 F.3d 933, 939–40 (8th Cir.2000). The court provided two examples of factual scenarios, similar to Plaintiff's, in which failure to give notice could interfere with the ability to exercise FMLA rights. The court noted that "in some cases where the leave was anticipated, an employer's failure to provide notice that the leave counts against the FMLA entitlement could interfere with the employee's ability to plan and use future FMLA leave." *Id.* at 940. Likewise, if an employee "exceeded her FMLA leave ... due to the employer's failure to notify her that her leave was designated as FMLA leave, and if she had been so notified, she would have returned to work at the end of the twelve weeks," then the employee's FMLA rights would have been hindered. *Id.* at 939. Thus, the crucial inquiry is whether the failure to give notice interfered with, restrained, or denied Plaintiff the ability to exercise any right provided by the FMLA. *See* 29 U.S.C. § 2615(a)(1). The right Defendants are alleged to have interfered with is Plaintiff's right to restoration to her former position upon the expiration of twelve weeks of FMLA leave. To prevail, Plaintiff must show that failure to notify interfered with, restrained or denied her the ability to exercise that right.

whether her medical condition prevented her from returning to work by March 17, Plaintiff responded that she was "still healing after having a child" and that "[y]ou have to heal at least six weeks before you can go out and walk and jump and play. You just don't bounce back out the bed." *See Defs.' Mot.Summ.J., Ex. 3, Dep. of Yolanda Holmes,* at 35–36.[10] Plaintiff believed that her short-term disability benefits expired on March 31. *Id.* at 31. When asked whether she was "able to work when the short-term disability benefits ceased?" she further responded "[n]o, not according to my physician, no." *Id.* at 88. She testified that she was ready to return to work on April 16, 1998, that she reapplied for her job after that date, and that "I couldn't [re]apply until I was able to work and look for a job so it wasn't immediately after I was terminated." *Id.* at 40–41, 50. Thus, Plaintiff's own testimony establishes that she was not able to return to work when her FMLA leave expired on March 31.

Plaintiff's alternative position is that she was entitled to FMLA leave until she gave birth, and was then entitled to six weeks of maternity leave that would not be counted against the FMLA twelve week/sixty day leave. She claims that Defendants had a policy granting six weeks post-birth maternity leave, after which employees were entitled to take the remainder of their FMLA leave that was "suspended" upon the birth of the child. *See Pl.'s Opp'n Defs.' Mot.Summ.J.,* at 4. She offers as proof the email between David Coaxum and Andrea Colbert, which provides names of pregnant employees who were given leave beyond their FMLA leave. *See supra,* ¶ 3(A)(1). She also contends that she herself was promised additional leave. *See*

*Defs.' Mot.Summ.J., Ex. 3, Dep. of Yolanda Holmes,* at 83–84. Defendants deny that Plaintiff was promised an additional six weeks of post-birth maternity leave and deny that they have ever maintained such a policy.

This factual dispute is immaterial to Plaintiff's FMLA claim. First, Plaintiff's own testimony establishes that she believed that her FMLA leave expired on March 31, 1998. *Pl.'s Mot.Summ.J., Ex. 4, Dep. of Yolanda Holmes,* at 32. She thus cannot show that she was mislead regarding her FMLA rights. Viewing the evidence in the light most favorable to Plaintiff on the post-birth leave would show that Plaintiff was promised and then denied a benefit beyond that provided by the FMLA. The FMLA, however, does not provide a remedy for broken promises or deviation from policy. The FMLA is a "balanc[ing]" act, an attempt to provide employees with some leave, "a reasonable leave," without completely ignoring the legitimate "demands of the workplace." 29 U.S.C. §§ 2601(b)(1) & (2). The Act limits the reasons that employees may take leave and establishes that the "employee shall be entitled to a total of 12 workweeks of leave during any" year. 29 U.S.C. § 2612(a)(1) (emphasis added).

■ Plaintiff argues that Section 2652 of the Act and 29 C.F.R. § 825 .700 require Defendants to extend to her any benefit given to other pregnant employees. Section 2652 states that "[n]othing in [the FMLA] ... shall be construed to diminish the obligation of an employer to comply with ... any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established under" the FMLA. 29 U.S.C. § 2652(a). Section 825.700 pro-

---

**10.** Plaintiff gave birth to her child on March 5, 1998. March 31 arrived only three and a half weeks later. Plaintiff acknowledged that her doctor told her she would be able to return to work on April 16, 1998. *Id.* at 39.

vides, in relevant part, "[a]n employer must observe any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established by the FMLA." 29 C.F.R. § 825.700(a). These provisions cannot be interpreted to give employees a cause of action *under the FMLA* to enforce other employment agreements. This very argument was made and rejected in *Rich v. Delta Air Lines, Inc.*, 921 F.Supp. 767, 773 (N.D.Ga.1996) (explaining that "Section 825.700 does not, and could not, however, create a federal cause of action under the FMLA to enforce the voluntary employer policies of providing benefits that exceed those required by the FMLA" and that the "Department of Labor has no regulatory power to rewrite, and clearly did not rewrite, the FMLA in such a manner"); *see also Ragsdale*, 218 F.3d at 939 (explaining that "the FMLA's legislative history supports the view that the FMLA was intended only to be a statute that provided a minimum labor standard; an assurance that employers would provide employees with twelve weeks of leave every year." (citing S.Rep. No. 103–3, at 4 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 6; S.Rep. No. 103–3, at 28 (1993), *reprinted in* U.S.C.C.A.N. 3, 30)). As the Eighth Circuit explained in *Ragsdale*, "twelve weeks of leave is both the minimum the employer must provide and the maximum that the [FMLA] requires." *Ragsdale*, 218 F.3d at 937. Defendants' alleged six weeks post birth maternity policy cannot be used to expand Plaintiff's FMLA rights. The FMLA does not entitle Plaintiff to additional leave beyond the twelve weeks of FMLA leave. *Id.* at 938 (citing 29 U.S.C. § 2612(a)(1); 29 U.S.C. § 2612(d)(1)).[11]

In sum, Plaintiff's FMLA leave began to run upon the completion of her vacation, January 7, 1998, and expired twelve weeks later, on March 31, 1998. Plaintiff was unable to return to work on that date, and thus had no right to be restored to her former position. Accordingly, summary judgment will be entered in favor of Defendants on Plaintiff's FMLA claim.

### B. Plaintiff's first motion for summary judgment/Defendants' Motion to Withdraw.

Plaintiff's first summary judgment motion addresses Defendants' failure to respond to her request for admissions. (Paper No. 32). She claims that summary judgment is proper because all material facts in regard to this claim have been admitted by Defendants, failure to respond to Plaintiff's requests for admission. Defendants then moved to withdraw their admissions.

None of Plaintiff's requests for admissions is a material fact. At most, the admissions establish that Defendants treated other pregnant employees more favorably than Plaintiff because Defendants maintained a policy that provided six weeks of post-birth maternity leave that

---

11. The FMLA also provides that it is unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the Act. 29 U.S.C. § 2615(a)(2); *see also Cline*, 144 F.3d at 301 (explaining that under Section 2615, a plaintiff must show that "she engaged in protected activity, that the employer took adverse action against [her], and that the adverse action was casually related to the plaintiff's protected activity.")

(citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4 th Cir.1989)). Defendants contend that Plaintiff has failed to establish that Defendants terminated her in retaliation for exercising her FMLA rights. *Defs.' Mot. Summ.J.*, at 18–19. This is, however, a question this court need not address because Plaintiff has admitted that she has "not alleged retaliation under the FMLA." *Pl.'s Opp'n Defs.' Mot.Summ.J.*, at 3.

would not be reduced by FMLA leave, that Plaintiff was told she would be allowed six weeks post-birth leave, and that Defendants denied Plaintiff the leave. For the reasons previously discussed, Defendants are entitled to summary judgment even assuming the accuracy of those facts.[12] Accordingly, the motion to withdraw is denied as moot. Plaintiff's motion for summary judgment based on the admissions is denied.

### IV. *Conclusion.*

Accordingly, Plaintiff's first motion for summary judgment is denied. Defendants' motion to withdraw admissions is denied as moot. Defendants' motion for summary judgment is granted. Plaintiff's second motion for summary judgment is denied. A separate order will be entered.

### *ORDER*

For the reasons stated in the foregoing memorandum Opinion, it is this _____ day of March, 2001, by the United States District Court for the District of Maryland, ORDERED that:

1. Plaintiff's First and Second motions for summary judgment BE, and the same hereby ARE, DENIED;

2. Defendants' motion to withdraw admissions BE, and the same hereby IS, DENIED as moot;

3. Defendants, motion for summary judgment BE, and the same hereby IS, GRANTED;

4. JUDGMENT BE, and the same hereby IS, ENTERED in favor of E.SPIRE COMMUNICATIONS, INC. and AMERICAN COMMUNICATIONS SERVICES, INC., and against YOLANDA HOLMES;

---

**12.** The court would, in any event, grant Defendants' motion to withdraw the admissions

5. All prior rulings are incorporated herein and this is a final judgment for purposes of Fed.R.Civ.P. 58; and

6. The Clerk is directed to transmit copies of the Memorandum Opinion and this Order to counsel for the parties and CLOSE this case.

in the absence of prejudice to Plaintiff.